FILED '09 JUL 16 07:39USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COLUMBIA HELICOPTERS, INC.,  
an Oregon corporation,

        Plaintiff,

   v.

CARSON HELICOPTERS, INC.,  
a Pennsylvania corporation  
formerly named "Carson  
Services, Inc.,"

        Defendant.

Civ. No. 08-6415-AA

OPINION AND ORDER

AIKEN, Chief Judge:

    Plaintiff Columbia Helicopters, Inc. (Columbia) brings suit against defendant Carson Helicopters, Inc. (Carson), alleging breach of contract, anticipatory breach of contract and declaratory relief. Columbia now moves for summary judgment as to its fourth claim. Specifically, Columbia seeks a declaration that a contractual indemnity provision obligates Carson to defend Columbia against claims arising from an August 2008 helicopter crash.

1 - OPINION AND ORDER

BACKGROUND

Columbia and Carson sell, lease, and maintain helicopter aircraft, and Columbia also provides repair and maintenance services. In 1990, the parties entered into a Repair/Overhaul Service Agreement (Agreement), under which Columbia agreed to perform repair and maintenance services for Carson's helicopters.

The Agreement contains an indemnity clause in Paragraph 10 that provides:

> [Carson] acknowledges that the reasonable cost of repairs and overhauls includes the reasonable cost of responding to liabilities which may arise out of such services. It is also acknowledged, however, that the potential liabilities which may result from the operation of aircraft the class and size of the Aircraft may far exceed what may be reasonably expected of [Columbia]. Since [Carson] is the sole determiner of what liabilities the Equipment is exposed to, *[Carson] agrees to indemnify, defend and hold harmless [Columbia] from and against any and all claims made by any party or parties whomsoever, based upon any act or omission, whether negligent or otherwise, of [Columbia] in the performance of the Repair/Overhaul services provided hereunder which exceed the sum of five million United States dollars (U.S. $5,000,000) for any one individual claim or ten million United States dollars (U.S. $10,000,000) for all claims in the aggregate arising out of any one occurrence.* [Columbia] reserves the right to request proof of [Carson]'s ability to satisfy its commitment herein through insurance or otherwise and may decline to perform any services under this Agreement if such proof is refused or deemed by [Columbia] to be inadequate for any reason. This indemnity shall survive the termination of this Agreement and/or the sale of the Equipment by [Carson].

Complaint, Ex. 1, pp. 9-10 (emphasis added).

On August 5, 2008, a Sikorsky S-61 helicopter owned by Carson

2 - OPINION AND ORDER

crashed in the Shasta-Trinity National Forest in Northern California. Nine passengers were killed, including seven firefighters, one Carson employee, and one United States Forest Service official. Four other passengers survived but suffered severe injuries.

Columbia has been named as a defendant in at least five lawsuits, all of which allege that Columbia and other defendants were negligent in numerous respects, including the maintenance and repair of the Sikorsky S-61 helicopter and its component parts. Columbia did not tender defense of these lawsuits to Carson. According to Carson, Columbia instead tendered defense to its insurer, who accepted the tender without reservation of rights and has assigned defense counsel to defend Columbia in these actions.

On December 31, 2008, Columbia filed suit alleging claims for breach of contract, anticipatory breach of contract, violations of the Uniform Fraudulent Transfer Act, declaratory judgment, and injunctive relief. Columbia has since withdrawn its claims under the Uniform Fraudulent Transfers Act and for injunctive relief.

Columbia moves for summary judgment on its Fourth Claim, which seeks a declaration that the indemnity provision in the Agreement is enforceable and applies to all claims against Columbia arising out of the August 2008 helicopter crash.

## DISCUSSION

The parties dispute whether Paragraph 10 of the Agreement

creates a duty on the part of Carson to defend claims filed against Columbia arising out of 2008 helicopter crash.[1]

Columbia argues that language of Paragraph 10 expressly requires Carson to "defend" Columbia against "any and all claims" arising from Columbia's performance of its duties under the Agreement, if such claims exceed $5,000,000 individually or $10,000,000 in the aggregate. Accordingly, Columbia contends that Carson is contractually obligated to defend claims brought against Columbia alleging negligence in the maintenance and repair of the Sikorsky S-61 helicopter involved in the 2008 crash, as such claims exceed the threshold monetary amounts in Paragraph 10.

Under Oregon law, a three-step process applies to contract interpretation. Hanna Ltd. Partnership v. Windmill Inns of America, Inc., 223 Or. App. 151, 160, 194 P.3d 874 (2008).

> In the first step, the court examines the text of the disputed provision in the context of the contract as a whole and determines, as a matter of law, whether the provision is ambiguous. If the provision is ambiguous, the second step is for the trier of fact to examine extrinsic evidence of the contracting parties' intent. If the ambiguity remains after those two steps, "the court relies on appropriate maxims of construction."

Id. (citing and quoting Yogman v. Parrott, 325 Or. 358, 937 P.2d 1019 (1997)).

---

[1] The parties entered into a stipulation regarding Carson's duty of indemnification. Therefore, the only issue raised in this motion is whether Paragraph 10 creates a duty to defend claims arising from the 2008 crash.

4 - OPINION AND ORDER

The express language of Paragraph 10 provides that Carson shall "indemnify, defend and hold [Columbia] harmless" "from and against any and all claims" based on Columbia's performance of duties under the Agreement. Given the plain meaning of "defend" in the context of Paragraph 10, the Agreement clearly obligates Carson to defend Columbia against claims arising from its performance of duties under the Agreement that exceed the threshold monetary amounts. Otherwise, the term "defend" would have no meaning. Nevertheless, Carson argues that the phrase "indemnify, defend and hold harmless" is subject to alternative, plausible interpretations and is therefore ambiguous.

First, Carson argues that the title of Paragraph 10, "Indemnities," and inclusion of the terms "indemnify" and "hold harmless" supports an alternative interpretation that the parties intended to create only a duty of indemnity. Carson maintains that "indemnify" and "hold harmless" generally have the same meaning, and inclusion of the term "defend" is mere "boilerplate." I find this argument unpersuasive given the plain meaning of "defend" and its inclusion in Paragraph 10. To interpret the Agreement as creating only a duty of indemnity would require the court to omit or ignore this term. See Or. Rev. Stat. § 42.230 (in construing contracts, court may not "omit what has been inserted" and must "give effect to all" provisions); Standley v. Standley, 90 Or. App. 552, 556, 752 P.2d 1284 (1988) (contract should be interpreted to

5 - OPINION AND ORDER

give meaning to all of its terms). Thus, the Agreement does not limit Carson's duty to only that of indemnification.[2]

Second, Carson argues that a duty to defend differs from a duty to pay defense costs, and the Agreement's failure to distinguish the two and define the scope of Carson's duty renders Paragraph 10 ambiguous. In so arguing, Carson cites <u>Save Mart Supermarkets v. Underwriters at Lloyd's London</u>, 843 F. Supp. 597 (N.D. Cal. 1994). <u>Save Mart</u> involved an insurance policy that explicitly required the insurer to pay for certain defense costs. The insured filed suit to secure coverage under the policy and sought a declaration that the insurer had a duty to defend an underlying lawsuit and pay defense costs as they were incurred. <u>Id.</u> at 602. The district court denied the insured's motion for summary judgment, finding that "[a]n insurer may assume a duty to reimburse for defense costs without assuming a duty to defend," and "[t]herefore, an obligation to reimburse is not determinative of an obligation to defend." <u>Id.</u> at 603.

In contrast, the Agreement here explicitly obligates Carson to "defend" Columbia against certain claims, rendering the holding in

---

[2]Regardless, "[a]n agreement to 'hold harmless' is generally held to include an obligation to defend, or to reimburse for the costs of defense, when an action within the terms of the agreement is filed against the indemnitee." <u>U.S. Fire Ins. Co. v. Chrysler Motors Corp.</u>, 264 Or. 362, 369, 505 P.2d 1137 (1973). Thus, even if the court ignored the term "defend," Carson's duty to "hold harmless" arguably encompasses a duty to defend.

6 - OPINION AND ORDER

Save Mart of little relevance. Moreover, Columbia's complaint and motion for summary judgment seek only a declaration that Carson has a duty to defend claims filed against Columbia as a result of the August 2008 helicopter crash.

Third, Carson argues that the Agreement "clearly expresses an intent that Columbia will bear the initial cost of responding to its liabilities," thus rendering Carson's duty to defend ambiguous. Opposition, p. 9. Carson maintains that the following language underscores Columbia's intent to assume primary liability arising from its repair and maintenance services: "[Carson] acknowledges that the reasonable cost of repairs and overhauls includes the reasonable cost of responding to liabilities which may arise out of such services. . . . [and] that the potential liabilities which may result from the operation of . . . the Aircraft may far exceed what may be reasonably expected of [Columbia]."

I agree that the intent of this language is to acknowledge the shared assumption of liabilities, as evidenced by the inclusion of threshold claim amounts that trigger Carson's duties. However, Paragraph 10 also provides that "[s]ince [Carson] is the sole determiner of what liabilities the Equipment is exposed to," it shall "defend" Columbia against claims exceeding the threshold amounts. Thus, I do not find that the parties' recognition of shared liabilities creates an ambiguity as to Carson's duty to defend.

7 - OPINION AND ORDER

Fourth and finally, Carson argues that Columbia, through its actions after the helicopter crash, acknowledged that the indemnity provision in Paragraph 10 is ambiguous. Carson emphasizes that Columbia proposed an amendment to the Agreement in an attempt to reach consensus regarding the scope of Carson's duties. However, extrinsic evidence of the parties' intent should not be considered unless the language of Paragraph 10 is ambiguous. For the reasons explained above, it is not. Further, Columbia's proposed amendment and actions after the crash arguably constitute settlement efforts that are irrelevant and inadmissible in any event.[3]

In sum, I find that the plain language of the Agreement obligates Carson to defend Columbia "against any and all claims" arising from Columbia's repair and maintenance services that exceed the threshold amounts. Here, the claims against Columbia allege negligence in the repair and maintenance of the Sikorsky S-61 helicopter and its component parts and exceed $10,000,000 in the aggregate, thus falling within the scope of Carson's duty.

In its reply, Columbia asserts that the court should also find that Carson and Columbia, as co-defendants, require separate counsel and that Columbia must be permitted to select its own counsel. However, Columbia's complaint seeks neither the actual

---

[3]To that end, Columbia filed a motion to strike Exhibit 5, Columbia's proposed amendment. Because I find that Columbia's proposals are extrinsic evidence that should not be considered, the motion to strike is moot.

8 - OPINION AND ORDER

enforcement of Carson's contractual duty nor recovery of defense costs; it seeks only a declaration that the Agreement contains an enforceable duty to defend. Similarly, Columbia's motion for summary judgment requests a declaration that Carson is contractually obligated to defend Columbia. Therefore, I limit my ruling accordingly and find that Paragraph 10 creates an obligation on the part of Carson to defend Columbia against claims arising from the August 2008 helicopter crash.

## CONCLUSION

For the reasons explained above, the language of the Repair/Overhaul Service Agreement creates a duty on the part of Carson to defend Columbia against claims arising from the August 2008 helicopter crash that exceed the sum of $5,000,000 individually or $10,000,000 in the aggregate. Accordingly, Columbia's Motion for Summary Judgment (doc. 63) is GRANTED, and Columbia's Motion to Strike (doc. 71) is DENIED as moot.

IT IS SO ORDERED.

Dated this  15  day of July, 2009.

_____
Ann Aiken
Chief United States District Judge